UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                                          Case No.: 1:16-cr-00153-CG-N

**DAVID J. JIMENEZ,**

    **Defendant.**

_____/

**POSITION OF THE DEFENDANT WITH RESPECT TO SENTENCING FACTORS**

Defendant David J. Jimenez, by and through undersigned counsel, pursuant to the Court's Order [ECF 228] and Local Rule of Criminal Procedure 32(b)(4) files his position on the revised *Presentence Investigation Report* (the "**PSR**") [ECF 239] filed by the United States Probation Office (the "**Probation Office**") on December 18, 2017. Specifically, Mr. Jimenez disagrees with the Probation Office's offense level computations in paragraphs 17, 19, and 26 of the PSR, and states:

    **I.    Background**

On October 13, 2017, Mr. Jimenez was convicted for (i) conspiracy to commit fraud and misuse of visas, permits, and other documents (18 U.S.C. § 1546) in violation of 18 U.S.C. § 371; (ii) conspiracy to commit money laundering in violation 18 U.S.C. § 1956(h); and (iii) money laundering in violation of 18 U.S.C. § 1956(a)(I)(A)(i).

The burden to establish a disputed fact in the PSR is on the Government. *United States v. Liss*, 265 F.3d 1220, 1230 (11th Cir. 2001); L.R.Crim.Proc. 32(b)(4). Contrary to the Probation Office's conclusion, the Government failed to meet its burden of establishing that: (i) any trafficked documents as defined by statute were ever involved in his conviction for misrepresentation (*see* PSR, ¶ 17); (ii) more than 24 documents were trafficked (*see* PSR, ¶ 17);

and (ii) that Mr. Jimenez's conviction for money laundering involved "sophisticated" laundering (*see* PSR, ¶ 19).  As such, Mr. Jimenez's offense level computation should be reduced by at least 8 levels (reduction of 6 levels since no "documents" were trafficked in connection with his immigration fraud conviction and a reduction of 2 levels for conviction of a non-sophisticated money laundering scheme).

## II.  A.  § 2L2.1(b) does not apply since no immigration identification "documents" were trafficked or involved

Section 2L2.1 of the of the United States Sentencing Guidelines ("**Guidelines**") provides that the base offense level for a conspiracy to violate 18 U.S.C. §1546 (immigration fraud) is 11. In paragraph 17 of the PSR, the Probation Office determined that Mr. Jimenez's immigration fraud conviction involved the use of 25-99 documents and, thus, added six levels to his base offense level pursuant to § 2L2.1(b). However, it is our position that, as a matter of law, this provision does not apply based upon the applicable definition of documents.

> § 2L2.1(a) defines three separate types of conduct for which it applies:
>
> Trafficking in a Document Relating to Naturalization, Citizenship, or Legal Resident Status, or a United States Passport; False Statement in Respect to the Citizenship or Immigration Status of Another; Fraudulent Marriage to Assist Alien to Evade Immigration Law

The first conduct is *trafficking in documents related to immigration status;* the second refers to *false statements* about the status of another; and, the third refers to aiding someone to engage in a sham marriage. This section provides for a base level of 11. The Probation office in paragraph 17 of the PSR asserts that there is an increase from this base level pursuant to §2L2.1(b)(2)(B) because "the offense involved between 25 and 99 documents, pursuant to U.S.S.G. §2L2.1(b)(2)(B). Therefore, the base offense level in this case is 17." This is error.

B.     The definition of documents under §2L2.1(b).

The plain statutory language universally defines the relevant "documents" which are involved in the trafficking and thus merit the application of § 2L2.1(b)(2) in a way which precludes its application in this case. And the case law wholly supports it. To define the scope of the term of art "documents" which are trafficked we naturally turn to language in the statute of conviction to which § 2L2.1 applies in this case. 18 USC § 1546(a) is our logical source:

> any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, **or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States.** (Emphasis added).

"In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy" *Dada v. Mukasey*, 128 S.Ct. 2307, 2317 (U.S. 2008)(quoting *Crandon v. United States,* 494 U.S. 152, 158, (1990)); *United States v. Heirs of Boisdore,* 8 How. 113, 122, 12 L.Ed. 1009 (1850) ("[W]e must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy")."[W]hen a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows"). *L.L.C. v. Mattel, Inc*., 128 S. Ct. 1396, 1404 (2008); *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 383 (2003) (citation omitted)).

Here the statute uses specific terms; i.e., "visa," "border crossing card," "alien registration receipt card," followed by the more general phrase "other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United

States." When applying the canons of construction to determine what types of "documents 2L2.1(b) is referring to it becomes clear that the types of documents it is referring to are exactly as described- the actual documents which prove immigration or citizenship status, legal ability to work, authority to enter the US, and/or identity.[1]

### C. The defendant did not traffic in any types of immigration or identity documents nor were any involved

Neither the evidence presented nor the PSR provide any indication that any documents as defined in the statute were in any way involved in this case much less trafficked as the guideline envisions. Jimenez was convicted of conspiring to commit misrepresentations on I-140 petitions filed by US businesses. As the Expert witness testified, an approved petition letter grants no immigration status, authorization to work, or right to enter the United States whatsoever. It cannot be used for identification or presented to an immigration or other law enforcement officer for any purpose.  Instead, if approved, the result is a very limited determination of one agency, USCIS, that the petitioning entity qualifies as a multinational company and that its foreign employee qualifies as an executive under the statute.

If the foreign executive wishes to come to the United States and be employed, he must go through the formal process of applying and being approved for an immigration visa by the Department of State at the US embassy overseas. As the foreign national has no legal standing in the I-140 petition process, the company has no legal standing in the visa application process.

---

[1] *See also United States v. Kuku*, 129 F.3d 1435, 1440 (11th Cir. 1997)("Where the primary purpose of the offense involved the unlawful production, transfer, possession, or use of identification documents for the purpose of violating, or assisting another to violate, the laws relating to naturalization, citizenship, or legal resident status, apply § 2L2.1"); *United States v Castellanos,* 165 F3d 1129 (7th Cir, 1999  (counterfeit resident alien cards and Social Security cards, even though cards had not been completed); *United States v Singh, 335 F3d 1321* (11th Cir. 2003) (domestic driver's licenses, military identification cards and U.S. government identification cards as "documents" for purposes of USSG § 2L2.1(b)(2)")[1]

Presenting the approval letter in the application to the embassy is simply one of many qualifications which the foreign national must meet in order to be granted an actual entry document; i.e., the immigrant visa. Then if the visa is granted, the person then must apply for admission to enter the US at the border or airport by another agency, Customs and Border Protection.

In this the statutory schema is clear: the misrepresentations were made seeking a determination in favor of the company while the visa which is the actual immigration identity and entry document must be applied for by the foreigner overseas.

And there was no evidence or testimony that the defendant was involved with, much less trafficked in any status, entry, or identification documents whatsoever[2] Therefore, if the court finds that §2L2.1(b) does not apply, the court should reduce the enhancement by 6 levels.

### III. The Probation Office Erroneously Determined that Mr. Jimenez's Visa Fraud Offense Involved More than 24 Documents (Paragraph 17 in PSR).

Section 2L2.1 of the Guidelines provides that the base offense level for a conspiracy to violate 18 U.S.C. §1546 (immigration fraud) is 11. USSG at § 2L2.1(a). The Guidelines further provide that an offense involving 6-24 documents increases the base offense level by 3 and that an offense involving 25-99 documents increases the base offense level by 6. USSG at § 2L2.1(b)(2)(A).[3]

---

[2] *Compare United States v. Christ*, 513 F.3d 762, 766 (7th Cir. 2008) *with the present case* (Receiving bribes in order to secure the approval of immigrant visas to receive visas without being interviewed in the former while there is no evidence that the defendant was involved in any way in any applications for a visa much less trafficked in them or manufactured, forged, sold, acquired by bribery, or possessed machines or blank documents for making them in the present case.)

[3] The application note 2 to the section provides that "[w]here it is established that multiple documents are part of a set of documents intended for use by a single person, treat the set as one document."

In paragraph 17 of the PSR, the Probation Office determined that Mr. Jimenez's immigration fraud conviction involved the use of 25-99 documents and, thus, added six levels to his base offense level.  However, the Government failed to establish at Mr. Jimenez's trial that more than 24 documents were involved in Mr. Jimenez's immigration fraud conviction.  During Mr. Jimenez's trial, the Government introduced samples of documents from 51 different petitions that were allegedly filed with USCIS by Mr. Jimenez, his colleagues, and others into evidence. However, the Government only presented testimony from approximately 17, but certainly less than 25, witnesses, U.S.-based petitioners, that asserted that the petition and associated exhibits filed on their behalf were false or fraudulent.  Accordingly, the Government only presented sufficient evidence to establish that approximately 17 documents were involved in Mr. Jimenez's visa fraud conspiracy.

If the Government believes that Mr. Jimenez's deserves a 6 level enhancement because his immigration fraud conviction involved 25 or more documents, the Government must show that it *established, at Mr. Jimenez's trial,* that 25 or more of the petitions that Mr. Jimenez caused to be filed were fraudulent.  However, the Government cannot meet this burden because it only introduced testimony from 17 witnesses as to the legitimacy of the petitions Mr. Jimenez caused to file on the petitioners' behalf.  Even assuming that all 17 of the Government's petitioner-witnesses established that the petitions filed on their behalf were fraudulent, and based upon the testimony at trial, the Government cannot make the conclusory leap that all 51 petitions that it introduced samples of at trial were fraudulent.  Taken to its logical conclusion, the Government's theory would allow it to introduce testimony from a single petitioner-witness to establish that his or her petition was fraudulently filed and use that fraudulently filed petition to impute a fraudulent

taint on all 51 of the petitions (filed on behalf of other, non-testifying petitioners). This leap is inequitable and unconscionable.

Accordingly, the Government did not meet its burden of establishing that more than 24 documents were used in connection with Mr. Jimenez's immigration fraud conviction, the Court should limit any enhancement based on the number of documents involved in Mr. Jimenez's activity to 3 and compute Mr. Jimenez's base offense level for violation of 18 U.S.C. § 1546 to 14 (11 for violation of 18 U.S.C. §1546 plus a 3 level enhancement).

## IV. The Probation Office Erroneously Determined that Mr. Jimenez's Money Laundering Offense "Involved Sophisticated Laundering"

In the PSR, the Probation Office determined that Mr. Jimenez's money laundering offense "involved sophisticated laundering" and, thus, added a 2 level enhancement to his offense level. *See* PSR, ¶19 and USSG §2S1.1(b)(2)(C).

The Guidelines define "sophisticated laundering" to be money laundering that "typically involves the use of-(i) fictitious entities; (ii) shell corporations; (iii) two or more levels (i.e. layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate or (iv) offshore financial accounts." USSG §2S1.1, note 5(A). However, the Guidelines forbid the application of the sophisticated laundering enhancement if "the conduct that forms the basis for [the] enhancement under the guideline applicable to [money laundering] is the only conduct that forms the basis for" the enhancement. USSG §2S1.1 note 5(B).

Here, the only potential applicable "sophisticated laundering" hallmark of Mr. Jimenez's money laundering conviction is that Mr. Jimenez's conduct involved the use of offshore financial accounts. Mr. Jimenez's money laundering convictions stem from Counts 8 and 9 in the *Second Superseding Indictment* (the "**Indictment**") [ECF 75]. In those counts, the Government charged

that Mr. Jimenez's conduct involved financial transactions affecting foreign commerce, transfer of funds from a place outside of the United States to places within the United States, Mr. Jimenez's receipt of at least $3.7 million in foreign wire transfers as compensation for his conduct, the use of internationally-wired funds to pay United States business owners, international wire transfers to foreign beneficiaries' bank accounts in the United States. *See* Indictment, ¶¶ 44-52. In sum, Mr. Jimenez was indicted for conduct that entailed the use of offshore accounts and international transactions. Therefore, the Guidelines proscribe the application of the "sophisticated laundering" enhancement to Mr. Jimenez's offense level computation. Applying the "sophisticated laundering" enhancement to Mr. Jimenez's sentence is tantamount to double counting his use of offshore accounts in both his conviction and the enhancement. The Court should reject the Probation Office's unsubstantiated conclusion that the enhancement is applicable.

V.  **Based on the Probation Office's Errors Discussed Above, the Probation Office Erroneously Calculated the Total Offense Level (Paragraph 26)**

The Probation Office calculated Mr. Jimenez's total offense level to be 25. However, in calculating Mr. Jimenez's total offense level, as discussed above, the Probation Office erroneously: (i) added a 6 level enhancement to Mr. Jimenez's immigration fraud conviction since it did not prove that more than 25 trafficked documents were involved in the offense; (ii) did not even prove that the enhancement should have been limited to 3 levels; and (ii) determined that Mr. Jimenez engaged in a "sophisticated" money laundering scheme and, thus, added a 2 level enhancement. Accordingly, Mr. Jimenez's total offense level should be limited to 17 (11 for conspiracy to commit immigration fraud, plus a 2 level enhancement for the money laundering conviction, plus a 4 level enhancement for Mr. Jimenez's aggravating role).

VI.  **Other Factors to Consider in Sentencing**

In addition to reducing Mr. Jimenez's offense level as discussed above, Mr. Jimenez requests that the Court consider the following factors when sentencing Mr. Jimenez:

- There are no victims of Mr. Jimenez's crimes and he does not owe any restitution. *See* PSR, ¶ 12.

- Mr. Jimenez has spent much of his life working with and donating to religious and charitable organizations. Specifically, Mr. Jimenez has donated to and worked with organizations assisting battered women and children and sending food to foreign countries. PSR, ¶ 33.

- Mr. Jimenez has three young children and is the sole source financial support for them and his wife  PSR, ¶ 34.

A consistent factor throughout David Jimenez's offense conduct is decision making adversely affected by substance abuse, specifically the abuse of alcohol. PSR, ¶ 40. Between 2010 and 2016, Mr. Jimenez used alcohol regularly. Recently, the stress of the criminal case caused Mr. Jimenez to increase his reliance on alcohol as a coping mechanism. Mr. Jimenez sought and received alcohol abuse counseling by Dr. William I. Dorfman who recommends that Mr. Jimenez obtain inpatient substance-abuse treatment. A copy of Dr. Dorfman's analysis will be submitted to the Court and the Government.

The Federal Bureau of Prisons has an intensive residential treatment program, known as RDAP. As a participant in this program, offenders participate in half-day programming and half-day work, school, or vocational activities. Research by the Bureau and National Institute on Drug Abuse has demonstrated that RDAP participants are significantly less likely to recidivate and less likely to relapse to substance use than non-participants. Other studies also suggest that the RDAP can make a significant difference following release from custody and return to the community.

Dr. Dorfman has informed David Jimenez that he would benefit from continued alcohol counseling through participation in RDAP. Although this Court cannot order the Federal Bureau of Prisons to admit Mr. Jimenez to RDAP, this Court can recommend admission to RDAP. Therefore, undersigned counsel respectfully requests that this Court include an RDAP recommendation when pronouncing the sentence in this case.

## Conclusion

For the reasons cited herein, a low-end guideline sentence satisfies the policies set forth in 18 U.S.C. § 3553, while crediting the absence of any real risk of future criminal conduct given David Jimenez's personal characteristics. Therefore, in the absence of a motion for reduction of sentence under USSG §5k1.1, undersigned counsel respectfully requests that this Court impose a sentence of incarceration for a period of 24 months, with judicial recommendations for: (a) a prison camp near Miami, Florida; and (b) access to RDAP alcohol counseling.

As noted in the PSR, David Jimenez does not owe any restitution and his three young children are entirely financially dependent on Mr. Jimenez, who, after being imprisoned, will have virtually no ability to provide for them. Therefore, undersigned counsel respectfully requests that the Court waive imposition of a fine. *See* USSG § 5E1.2(a) and (e).

The undersigned certifies that he has conferred with opposing counsel and the Probation Office in a good faith effort to resolve any disputed matters

Dated: January12th, 2018            Respectfully submitted,

MATTHEW WEBER, ESQ.

By      */s/Matthew Weber*
        Matthew Weber
        Mateo502@hotmail.com
        Attorney for the Defendant
        66 W Flagler St., Ste 500
        Miami, Florida 33130

305-409-9312

BRISKMAN & BINION, P.C.

By    */s/ Donald M. Briskman*
      Donald M. Briskman
      dbriskman@briskman-binion.com
      *Attorney for Defendant*
      Briskman & Binion, P.C.
      205 Church St.
      Mobile, Alabama 36602
      251.433.7600

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this 12th day of January 2018, served a copy of the foregoing on Donna B. Dobbins, Esq. and Chris Bodner, Esq., 63 Royal Street, Suite 600, Mobile, AL 36602, via electronic filing.

By:    */s/ Matthew Weber*
      Matthew Weber

398641-000001
11
EAST\147728432.3